ANNETTE COSTA, Indiv. and as Special Adm'r of the Estate of Dominic Costa, Deceased, Plaintiff-Appellee, v. KEYSTONE STEEL AND WIRE COMPANY, Intervenor-Appellant.—ANNETTE COSTA, Indiv. and as Special Adm'r of the Estate of Dominic Costa, Deceased, Plaintiff-Appellee, v. OWENS-CORNING FIBERGLAS CORPORATION, Defendant-Appellant.

Third District    Nos. 3—93—0621, 3—93—0625 cons.

Opinion filed November 18, 1994.

Stevenson, Rusin & Friedman, of Chicago (D. William Porter, of counsel), for appellant Keystone Steel and Wire Company.

John Dames, of Kelley, Drye & Warren, of Chicago (Carolyn Quinn, of counsel), for appellant Owens-Corning Fiberglas Corporation.

James Walker, Ltd., of Bloomington (James Walker, of counsel), for appellee Annette Costa.

W. Mark Rasmussen, of Carter & Rasmussen, of Peoria (James R. Car-

ter, of counsel), for appellees Dresser Industries, Inc., and E.D. Bullard Company.

Karen L. Kendall and Christopher P. Larson, both of Heyl, Royster, Voelker & Allen, of Peoria (Brad A. Elward, of counsel), for appellee A.P. Green Industries, Inc.

Douglas M. Sinars, of Hafele, Schmidt, Stephens & Glancy, of Peoria (Daniel L. Schmidt, of counsel), for appellee Sprinkmann Sons Corporation of Illinois.

William F. Mahoney, of Segal, McCambridge, Singer & Mahoney, Ltd., of Chicago (Robert E. O'Malley, of counsel), for appellee Magid Manufacturing Company.

Michael P. Connelly, of Connelly & Schroeder, of Chicago (Daniel R. Karon, of counsel), for appellee Fibreboard Corporation.

JUSTICE STOUDER delivered the opinion of the court:

These two consolidated appeals (Nos. 3—93—0621 and 3—93—0625) arise out an action brought by the wife of an employee of intervenor-appellant, Keystone Steel & Wire Company (No. 3—93—0621). Annette Costa (hereinafter referred to as the plaintiff), in her individual capacity and as the executor of the estate of her husband, Dominic Costa, filed a multi-count complaint against numerous defendants, who in one way or another were connected with the manufacture, sale or use of asbestos-containing products. The plaintiff's decedent was an employee of Keystone from 1961 until his death in 1987. (The plaintiff's appeal (No. 3—93—0642) is disposed of in a companion opinion.)

Defendant-appellant, Owens-Corning Fiberglas Corporation (No. 3—93—0625) appeals from the judgment entered against it and in favor of the plaintiff. The other defendants (defendants-appellees in the companion case) are A.P. Green Industries, Inc., Sprinkmann Sons Corporation of Illinois, E.D. Bullard Company, Dresser Industries, Inc., Magid Manufacturing Company and Fibreboard Corporation.

First, a brief background on how the present appeals are before this court. In her 1988 complaint, the plaintiff alleged her husband died of mesothelioma as a result of exposure to the asbestos dust from the defendants' products. The voluminous record reflects that the majority of original defendants were granted dismissals or summary judgment during the extended discovery stage of these proceedings. The cause went to trial in September of 1992.

The record also reveals that just prior to the case going to trial, a barrage of motions (around 60) were filed by all the parties. One filed by the plaintiff pursuant to Supreme Court Rule 237(b) (134 Ill. 2d R.

237(b)) requested Owens-Corning to produce at trial Dr. Jon Konzen, Owens-Corning's vice-president for medical and health affairs. The trial court refused to quash this request. Near the opening of the plaintiff's case in chief, she called Dr. Konzen. For reasons discussed more fully below, Dr. Konzen refused to appear.

As a sanction, the trial court entered a judgment as to liability issues against Owens-Corning and stated that only the damages issue would go to the jury. The trial court denied the other defendants' motions for an immediate severance and the trial continued. The jury returned verdicts in favor of all defendants other than Owens-Corning. The jury specifically found in response to a special interrogatory that the decedent did not die of mesothelioma. The instructions given by the trial court informed the jury that the court had ruled in favor of the plaintiff and against Owens-Corning on the issues of negligence and proximate cause. The jury was instructed that the only issue for it to decide in the plaintiff's case against Owens-Corning was the amount of damages. The jury awarded the plaintiff $190,000 survival damages, $86,628 for loss of consortium and nothing for wrongful death.

The trial court subsequently granted the plaintiff's motion for a new trial against Owens-Corning limited to the issue of the amount of wrongful death damages. That jury awarded $700,000 in wrongful death damages. On Owens-Corning's motion, the trial court reduced the plaintiff's recovery by the amount she received from two other defendants who previously settled the claims against them for a total of $100,000. Thus, the plaintiff received a judgment against Owens-Corning in the amount of $876,628.

Owens-Corning filed an appeal. The plaintiff also filed an appeal claiming numerous errors on the part of the trial court. Intervenor Keystone Steel & Wire Company filed an appeal from a post-trial order which denied the company's claims for certain costs associated with producing numerous documents at plaintiff's request immediately before and during trial. On plaintiff's motion this court consolidated the three appeals for oral argument. For the reasons expressed below, we now affirm in cases Nos. 3—93—0621 and 3—93—0625.

Addressing Owens-Corning's appeal first, we note Owens-Corning does not challenge the sanctions entered by the trial court. As Owens-Corning explained at oral argument, it had been unsuccessful on appeal in challenging similar sanctions entered in other unrelated cases wherein Dr. Konzen had refused to appear. Rather, Owens-Corning chooses in this case to challenge the trial court's denial of its motions for summary judgment filed at various times before the trial and the denial of its motion for judgment *n.o.v.*

Additionally, Owens-Corning contends the jury instructions as given inadvertently left the issue of "injury" to be decided by the jury vis-a-vis Owens-Corning, and thus the verdict of the jury must be vacated because it is against the manifest weight of the evidence. Owens-Corning also challenges the trial court's decision to grant the plaintiff a new trial limited solely to the issue of the amount of wrongful death damages.

In May 1990, Owens-Corning moved for summary judgment. The motion was renewed a number of times, based on the assertion the plaintiff could not show her husband had been exposed to any Owens-Corning asbestos-containing product. The motion was denied after a hearing held immediately prior to the commencement of the trial. Following the plaintiff's case in chief, Owens-Corning moved to have its motion for summary judgment reconsidered.

As mentioned above, the plaintiff filed a Rule 237(b) motion requesting Dr. Konzen appear at trial. Owens-Corning moved to quash the request. Plaintiff argued that Konzen, an Owens-Corning employee since 1968, had long-standing knowledge about the dangers of asbestos and its health effects on workers. Owens-Corning asserted that in previous cases out of concern for its senior executives being required to appear at thousands of asbestos cases, the company had decided to "take a stand" on constitutional grounds and refuse to produce Konzen and other senior officers. Sanctions had been entered in those cases and they were up on appeal. (In one of those cases, the Illinois Appellate Court had upheld the sanctions about three weeks before the parties argued the motion to quash in this case. (See *Johnson v. Owens-Corning Fiberglas Corp.* (1992), 233 Ill. App. 3d 425, 599 N.E.2d 129).) In order to maintain consistency, Owens-Corning stated that it was going to continue to refuse to produce Dr. Konzen.

Konzen had previously been deposed by the plaintiff's attorney. Owens-Corning was prepared to stipulate to what Konzen would testify to at trial. The plaintiff refused the offer. The trial court denied the motion to quash.

At the open of the plaintiff's case, portions of a deposition of Dr. Konzen in an unrelated case were read to the jury. Subsequently, the plaintiff called Konzen. He did not appear. The plaintiff moved for sanctions and filed an offer of proof that Konzen would testify, *inter alia*, that if the decedent had mesothelioma, the disease was "caused by the total and cumulative effect of all the asbestos to which he was exposed, including the asbestos from [Owens-Corning] Kaylo products used at Keystone." The trial court entered a judgment against Owens-Corning on all issues of liability and proximate causation of injury, disability and death. The court stated the only issue which would go to the jury was the issue of damages.

Again, Owens-Corning has chosen not to challenge the imposition of sanctions or the scope of those sanctions in this appeal. Instead, the company argues the evidence presented by the plaintiff was so insufficient that it was error not to grant the motions for summary judgment.

Owens-Corning concedes that generally after an evidentiary trial, a previous order denying a motion for summary judgment is neither appealable nor reviewable on appeal because the result becomes merged in the subsequent trial. (See *Home Indemnity Co. v. Reynolds & Co.* (1962), 38 Ill. App. 2d 358, 187 N.E.2d 274.) However, Owens-Corning argues that the unique circumstances of this case render the denial appealable and reviewable. Owens-Corning contends there was no evidentiary hearing regarding its liability. The company argues it was faced with the dilemma of either producing the corporate witness to preserve the summary judgment motion or abandon the summary judgment motion to protect the rights of its employees.

■ We find little merit to Owens-Corning's argument on this issue. Here, Owens-Corning decided to stand on its decision not to produce Dr. Konzen. Sanctions were imposed which precluded the necessity of an evidentiary hearing on liability issues *vis-a-vis* Owens-Corning. It was Owens-Corning's action which led to a judgment without a full evidentiary hearing on liability. Owens-Corning cannot now rely on this as a basis for prompting a review of the denial of its motions for summary judgment. (See *Cedric Spring & Associates, Inc. v. N.E.I. Corp.* (1980), 81 Ill. App. 3d 1031, 402 N.E.2d 352.) Second, had Konzen been produced, the liability issue would have proceeded to an evidentiary hearing and the denial of the motion would have merged into the trial proceedings and thus been unreviewable. Owens-Corning's decision had nothing to do with preserving the summary judgment issue.

Owens-Corning argues the instructions tendered to the jury preserved for the jury's decision the "injury" element. Accordingly, since the jury found the decedent did not die of mesothelioma, the plaintiff failed to prove the injury element.

The instructions informed the jury that as to all defendants except Owens-Corning, the plaintiff had the burden of proving that: (1) the defendant was negligent; (2) the decedent was injured; and (3) the defendant's negligence was the proximate cause of decedent's injury. The instruction regarding Owens-Corning stated in pertinent part: "The Court has stricken the pleadings of Owens-Corning Fiberglas and ruled in favor of the plaintiff and against Owens-Corning Fiberglas on the issue of negligence and proximate causation. Therefore, the only issue for you to decide in plaintiff's case against Owens-Corning Fiberglas is the amount of damages."

Owens-Corning keys onto the use of the words "negligence" and "proximate causation" in the preceding instruction to argue that since there is no specific mention of the term "injury" in the instruction, the jury was left to determine whether the plaintiff had proved the injury element against Owens-Corning. Since the jury specifically found that the decedent did not die of mesothelioma and the special interrogatory asking the jury that question was not limited to any particular defendant, the jury's apparent finding of injury *vis-a-vis* Owens-Corning is against the manifest weight of the evidence. We find no merit to this rather convoluted argument.

■ The instruction given the jury told it the only issue it was to decide against Owens-Corning was the amount of damages. The instruction also clearly explained why there was a finding of liability against Owens-Corning. Therefore, the question of whether the plaintiff proved the injury element of her claim against Owens-Corning was not an issue left to the jury's determination.

In a somewhat related contention, Owens-Corning argues that given the jury specifically found that the decedent did not die of mesothelioma, the trial court should have granted its motion for judgment notwithstanding the verdict. The company asserts the jury's answer to the special interrogatory is inconsistent with a verdict against it on liability. Again, this assertion is premised on Owens-Corning's argument that the instruction left the jury to decide if the actions of Owens-Corning injured the decedent. As stated above, this argument is specious.

■ While on first blush it appears rather extraordinary that Owens-Corning can be held liable for an alleged injury which the jury found the decedent did not suffer (we find the evidence presented at trial fully supports this finding), we note Owens-Corning's liability was not based on the evidence presented at trial, but was the result of sanctions being imposed for noncompliance with rulings of the court on Konzen's appearance. There is no inconsistency in the jury's determination. The jury instructions explained that Owens-Corning was being treated differently and why that was so. The jury was told it was charged only with determining the amount of damages to be assessed against Owens-Corning. The jury was also instructed on what issues it had to determine regarding the other defendants. In sum, the trial court did not err in denying Owens-Corning's motion for a judgment *n.o.v.*

Owens-Corning maintains the trial court erred in granting the plaintiff's motion for a new trial limited to wrongful death damages. In the alternative, Owens-Corning argues the cause should have been remanded for a new trial on all damage issues.

The decision of the trial court on a motion for a new trial will not be reversed on appeal unless it affirmatively appears from the record that the trial court abused its discretion. (*Herington v. Smith* (1985), 138 Ill. App. 3d 28, 485 N.E.2d 500.) In general, a new trial on the question of damages only is appropriately granted where: (1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict, nor that, in some other identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability. *McCarthy v. Bach* (1990), 204 Ill. App. 3d 691, 562 N.E.2d 352.

■ We note Owens-Corning's assertions are again premised on the contention that the "injury" element of plaintiff's claim was presented to the jury by the instructions tendered and also the jury's finding that the decedent did not die of mesothelioma. As stated above, we find no merit to Owens-Corning's contention concerning the jury instructions. There is no evidence the jury compromised on the issue of liability. The jury was not presented with any question as to the liability of Owens-Corning. The only issue for it was the amount of damages. When the jury returned a verdict awarding consortium and survival damages but nothing for wrongful death, the trial court found that the jury had ignored a proven element of damages and granted a new trial on that issue.

Owens-Corning argues the trial court should have ordered a new trial on all elements of damages because the jury's decision not to award wrongful death damages was based on the finding that the decedent did not die of mesothelioma. Again, there was no issue of liability presented and, thus, the jury could not have compromised on the issue of Owens-Corning's liability. Under the circumstances of this case, we find no abuse of discretion on the part of the trial court.

Intervenor-appellant Keystone Steel & Wire Company appeals from an order denying petitions for expenses, including attorney fees, incurred in complying with subpoenas *duces tecum* served by the plaintiff.

The record shows the plaintiff served subpoenas *duces tecum* on several employees and officers of Keystone and the attorney who represented Keystone in the worker's compensation action brought by the plaintiff. On August 28, 1992, Keystone moved to quash the subpoenas. The motions were denied on August 31, 1992.

Amended motions to quash were heard on September 8, 1992. In part, Keystone contended it would cost thousands of dollars to search

for the records requested by the plaintiff. Citing section 2—1101 of the Code of Civil Procedure (735 ILCS 5/2—1101 (West 1992)), Keystone requested the court conditionally deny the motions to quash on the payment in advance of reasonable expenses to cover the cost of searching the records and transporting them to the courthouse. The trial court denied Keystone's request for payment in excess of the statutory witness fees "before any effort [was] made to comply with the subpoenas." Keystone was further ordered to produce at its plant the requested documents for the plaintiff's inspection beginning on September 9, 1992. Thereafter, documents were viewed by representatives of the plaintiff at the Keystone plant.

On November 16, 1992, after the trial, Stevenson, Rusin & Friedman Ltd. filed a petition for "Expenses in Producing Documents for Trial." In the petition, the firm alleged that because one of their attorneys, John Maciorowski, was required to be present at the trial on September 25, 1992, expenses in the amount of $1,418 were incurred. According to the petition, Maciorowski had to cancel a deposition scheduled for that day and was generally unable to attend to the business of the firm.

(We note Maciorowski was called in regard to correspondence between Maciorowski's firm and medical experts retained for purposes of the worker's compensation proceedings which were pending at the time. At the conclusion of the offer of proof in which the plaintiff's attorney, James Walker, questioned Maciorowski, the trial court in sustaining the defendants' objections accused Walker of conducting a "fishing expedition" and what amounted to discovery depositions during the trial. The record reflects this was just one of many "fishing expeditions" carried on by the plaintiff which unnecessarily delayed and complicated the proceedings below.)

Also on November 16, 1992, Keystone filed a petition to recover expenses incurred by its employees and attorneys in complying with the subpoenas *duces tecum*. Keystone claimed a total of $13,296 in expenses. The attached affidavits show that over $10,000 of this amount was for attorney fees incurred by attorneys attending and assisting in the record inspections at Keystone in September and in arguing the motions to quash.

On December 4, 1992, the trial court denied the petitions finding section 2—1101 did not offer the relief requested.

On appeal, Keystone argues that in light of the provisions of section 2—1101 which allow a court to condition the denial of a subpoena *duces tecum* on the payment in advance of reasonable expenses in producing documents, the section should also allow for the payment of expenses after the production is complete and the actual costs are known.

In pertinent part section 2—1101 provides: "For good cause shown, the court on motion may quash or modify any subpoena or, in the case of a subpoena duces tecum, condition the denial of the motion upon payment in advance by the person in whose behalf the subpoena is issued of the reasonable expense of producing any item therein specified." 735 ILCS 5/2—1101 (West 1992).

In the instant case, the trial court did not condition the denial of the motions to quash on the payment of expenses in advance. Keystone cites no authority which supports its interpretation of section 2—1101. We find nothing in the statute requiring payment of expenses. Therefore, we find no error in the trial court's denial of Keystone's petitions.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in appeals Nos. 3—93—0621 and 3—93—0625.

Affirmed.

McCUSKEY and BRESLIN, JJ., concur.